**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| David Lopez, | : | Case No. 3:08-CV 2148 |
| Plaintiff, | : | |
| v. | : | |
| Commissioner of Social Security Administration, | : | **MEMORANDUM DECISION AND ORDER** |
| | : | |
| Defendant. | | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' Briefs on the merits (Docket Nos. 14 and 17). For the reasons that follow, this case is remanded to the Commissioner pursuant to Sentence Four of 42 U. S. C. § 405(g).

## I. PROCEDURAL BACKGROUND

On January 23, 2004, Plaintiff filed an application for DIB alleging that his disabling condition began on May 15, 2002 (Tr. 66-68). Plaintiff also filed a Title XVI application for SSI on January 23, 2004 (Tr. 15). The application for DIB was denied initially and on reconsideration (Tr. 54-57, 49-51).

Plaintiff requested a hearing on August 17, 2004 (Tr. 47). At the administrative hearing held in Toledo, Ohio on June 6, 2006, Plaintiff, represented by Attorney Loretta Wiley and Joseph Thompson, a Vocational Expert (VE), appeared and testified before Administrative Law Judge (ALJ) Barney Bernstein (Tr. 324). On April 13, 2007, the ALJ determined that Plaintiff was not entitled to a period of disability (Tr. 15-25). The Appeals Council denied Plaintiff's request for review on July 2, 2008 rendering the ALJ's decision the final decision of the Commissioner of Social Security (Tr. 3-5). Plaintiff filed a timely Complaint in this Court.

## II.  JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## III.  FACTUAL BACKGROUND

The following testimony was presented during the administrative hearing at which Plaintiff and the VE testified.

### A.  PLAINTIFF'S TESTIMONY

At the time of hearing, Plaintiff weighed 331 pounds (Tr. 331). To lose weight, Plaintiff walked a bicycle trail every other day for approximately thirty minutes (Tr. 332). Walking the bicycle trail caused leg soreness and pain and shortness of breath (Tr. 336, 338).

Plaintiff was last employed in 2002 as a laborer/landscaper (Tr. 328). The labor was intensive, requiring Plaintiff to lift heavy objects and work in a heated environment (Tr. 330). Six weeks after a pacemaker was implanted, Plaintiff returned to work. He was fired because of the health risks (Tr. 329). Plaintiff could not return to work as a landscaper as the heat stress was incompatible with his

2

hypertension (Tr. 330).

Plaintiff had hip replacement surgery as a juvenile (Tr. 336).  On or about May 10, 2002, Plaintiff was diagnosed with diabetes mellitus, hypertension, sleep apnea and arrhythmia (Tr. 328-329).

Plaintiff estimated that he could sit a couple of hours and walk for approximately one mile with a fifteen minute rest period after which he would use an inhaler to regain lung capacity (Tr. 335, 337, 338).  Occasionally, Plaintiff drove, swept using a vacuum sweeper and cooked (Tr. 334).

When sleeping, Plaintiff wore a continuous positive airway pressure (CPAP) machine (Tr. 332). He continued to have difficulty sleeping as evidenced by fatigue and the occasional "nodding off" during the day (Tr. 338).

### B. VE TESTIMONY

The VE considered that a hypothetical plaintiff who (1) could lift and carry as much as twenty pounds occasionally and ten pounds frequently, (2) could sit and stand while working, (3) could not stand and walk more than 50% of an eight-hour workday, (4) was required to refrain from walking for prolonged periods, (5) was required to refrain from reaching, stooping, kneeling or bending more than occasionally and (6) was restricted to work in an environment free of dust, smoke and chemical fumes, temperature and humidity, could not perform Plaintiff's past relevant work.  However, there was other light work that would accommodate the hypothetical plaintiff.  Specifically, positions as a cashier, shipping and receiving weigher and packager were compatible with the restrictions described in the hypothetical (Tr. 340).  There were approximately 1,500 cashier positions, 200 shipping and receiving weigher positions and 500 packager positions in the Toledo market area which included the City of Toledo and surrounding counties.  These numbers were adjusted to recognize an erosion in the

3

occupational base resulting from Plaintiff's limitations (Tr. 340-341).

The VE also described sedentary positions that would accommodate the prescribed limitations. These included a telephone quotation clerk, surveillance monitor and bench worker. There were approximately 250, 1,500, and 250 positions, respectively, in the Toledo labor market (Tr. 341). The sedentary and light positions, identified in Dictionary of Occupational Titles (DOT), did not recognize a sit/stand option in the job descriptions but they were nationally applicable (Tr. 341). The VE conceded that the consequences of falling asleep while working were reduced concentration, productivity and employability (Tr. 342, 343, 345).

## IV. MEDICAL EVIDENCE

During an eight-day hospital stay commencing on May 10, 2002, Plaintiff was diagnosed with and/or treated for symptoms associated with new onset diabetes mellitus, a neck mass, elevated liver enzymes, obstructive sleep apnea, sick sinuses, a rash and morbid obesity. Several medications, including insulin, were administered and prescribed upon discharge (Tr. 111-113, 139-141, 143-145). Plaintiff tested negative for hepatitis (Tr. 205). Continued treatment included the use of a CPAP machine and weight loss program (Tr. 138). The results of a Holter Monitor worn for 24 hours on May 14, 2002, showed premature ventricular contractions as well as frequent premature atrial contractions (Tr. 153-188). A pacemaker was implanted on May 17, 2002.

Plaintiff's underlying heart rhythm was normal on May 24, 2002. Further evaluation on June 19, 2002, of the stability of Plaintiff's pacemaker produced similar results (Tr. 102). In the meantime on June 10, 2002, Plaintiff's blood glucose levels were elevated (Tr. 252). The results from Plaintiff's sleep study administered on June 18, 2002 showed "very severe" obstructive sleep apnea (Tr. 107).

On June 13, 2002, Plaintiff commenced a treatment relationship with Lucas County Health

Department for purposes of controlling/monitoring his diabetes (Tr. 243). He related that his blood pressure and/or blood sugars were controlled in June and July 2002 (Tr. 241, 245). Although it was noted on October 15, 2002 that Plaintiff had been noncompliant with the diabetes/obesity program, he reported that he was feeling well (Tr. 242).

Plaintiff presented to the Health Department on March 11, 2003 for medication refills. He reported that his self-test showed controlled glucose levels (Tr. 239). His glucose levels were controlled on January 7, June 10, September 9, December 9, 2003 and February 20, 2004 (Tr. 233, 235, 236 237).

Dr. Recto O. Natividad, a family practitioner, noted that Plaintiff's asthma was stable on December 9, 2003 (Tr. 236). He opined on March 2, 2004, that the onset of asthma was episodic. Air quality and Plaintiff's weight were contributing factors to the onset of an attack (Tr. 230).

Plaintiff underwent a pulmonary function test on April 20, 2004 (Tr. 256). Although the results were within normal range, there was evidence of mild restrictive disease (Tr. 257). The electrolyte panel results derived from the specimen collected on August 20, 2004 were within normal reference ranges (Tr. 301).

Dr. Gary W. Hinzman, a radiologist, opined on May 11, 2004, that Plaintiff could (1) occasionally lift and/or carry twenty pounds, (2) frequently lift and/or carry ten pounds, (3) stand and/or walk about two hours in an eight-hour workday, (4) sit about six hours in an eight-hour workday and (5) push and pull on an unlimited basis other than limited by his ability to lift and/or carry (Tr. 261). Plaintiff could never climb using a ladder/rope/scaffold, crouch or crawl. He could occasionally climb using a ramp or stairs, balance, stoop or crouch (Tr. 262). Exposure to extreme cold or heat and fumes, odors, gases and dust were contraindicated (Tr. 263). In Dr. Hinzman's opinion, Plaintiff lacked any manipulative,

visual or communicative limitations (Tr. 262-263).

Dr. Robert E. Kose recommended that Plaintiff undergo a sleep study in May 2005 (Tr. 281-283). In June 2005, Dr. Dan Pipoly confirmed the clinical diagnosis of very severe obstructive sleep apnea (Tr. 275-280). In July, Dr. Pipoly resolved sleep inefficiency with the use of a CPAP titration system (Tr. 268). Dr. Kose concurred with Dr. Pipoly on September 8, 2005, that Plaintiff's severe obstructive sleep apnea improved with the CPAP machine; however, due to insurance problems, Plaintiff did not have a machine (Tr. 267).

Plaintiff obtained blood level checks as well as medication refills from the Health Department in August and November 2004, February, March, May, August, September and December 2005 (Tr. 290, 291, 292, 293, 295, 296). In September 2005, the Health Department physician opined that Plaintiff was able to sit about 1½ hours during an eight-hour workday and sit for two hours in an eight-hour workday, lift/carry frequently up to ten pounds and lift and carry occasionally up to twenty pounds and refrain from pushing/pulling (Tr. 286, 287).

In November 2005, Dr. Laxman R. Cingireddi, a family practitioner, increased the dosage of insulin as Plaintiff's diabetes mellitus was uncontrolled. He continued the cholesterol-lowering medication and verbalized the importance of taking the medication. Plaintiff reported that he was using a CPAP machine which apparently resolved any daytime sleepiness (Tr. 284).

## V.  STANDARD OF DISABILITY

The standard for disability under both the DIB and SSI programs is substantially similar. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920 (1999). To assist clarity, this Report and Recommendation references only the DIB regulations, except where otherwise necessary.

To establish entitlement to disability benefits, a claimant must prove that she or he is incapable

of performing substantial gainful activity due to a medically determinable physical or mental impairment that can be expected to result in death or to last for at least twelve months. *Murphy v. Secretary of Health and Human Services*, 801 F.2d 182, 183 (6th Cir. 1986) (*citing* 42 U. S. C. § 423(d)(1)(A)). The claimant must show that his/her impairment results from anatomical, physiological or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1513, 404.1528, 416.913, 416.928 (Thomson Reuters/West 2009).

To determine disability, the ALJ uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 (a) - (f) and 416.920 (a) - (f) (Thomson Reuters/West 2009). The ALJ considers: (1) whether claimant is working and whether that work constitutes substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether claimant has an impairment which meets or equals the durational requirements listed in Appendix 1 of Subpart P, Regulations No. 4, (4) whether claimant can perform past relevant work, and (5) if claimant cannot perform his/her past relevant work, then his/her RFC, age, education and past work experience are considered to determine whether other jobs exist in significant numbers that accommodate him/her. 20 C.F.R. §§ 404.1520 (a) - (f) and 416.920 (a) - (f) (Thomson Reuters/West 2009).

A finding of disability requires an affirmative finding at step three or a negative finding at step five. The claimant bears the burden of proof at steps 1-4, after which the burden shifts to the Commissioner at step five. The ALJ's analysis at step five typically involves an evaluation of the claimant's RFC to perform a particular category of work (i.e., sedentary, light, medium, heavy or very heavy work), in combination with an application of the grid to determine whether an individual of the claimant's age, education and work experience could engage in substantial gainful activity. *See* 20 C.F.R. Pt. 404, Subpart P, App. 2 (Thomson Reuters/West 2009).

## VI.  THE ALJ'S FINDINGS

After careful consideration of the entire record, the ALJ made the following findings:

1.      Plaintiff met the insured status requirements of the Act through September 30, 2006.

2.      Plaintiff had not engaged in substantial gainful activity since May 15, 2002, the alleged onset date of the decision.

3.      Plaintiff had severe impairments; however, such impairments did not, singly or in combination, meet or medically equal one of the listed impairments in 20 C. F. R. Part 4, Subpart P, Appendix 1.

4.      Plaintiff was reliable.

5.      Plaintiff had the residual functional capacity to perform a restricted range of light work activity.

6.      Plaintiff was unable to perform any past relevant work.

7.      Plaintiff was a younger individual, with at least a high school education and ability to communicate in English.  Considering these demographics and Plaintiff's residual functional capacity, there were jobs existing in significant numbers in the national economy that he could perform.

8.      Plaintiff had not been under a disability as defined under the Act from May 15, 2002 through the date of the decision or April 13, 2007.

(Tr. 15-25).

## VII.  STANDARD OF REVIEW

Pursuant to 42 U. S. C. §§ 405(g), this Court has jurisdiction to review the Commissioner's decisions.  *Cutlip v. Secretary of Health and Human Services*, 25 F. 3d 284, 286 (6ᵗʰ Cir. 1994).  Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards.  *Id*. (*citing Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

8

as adequate to support a conclusion.  *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6ᵗʰ Cir. 1981) *cert. denied,* 103 S. Ct. 2428 (1983)).  The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility.  *Id*. (*citing Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6ᵗʰ Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6ᵗʰ Cir.1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Id.* (*citing Kirk*, 667 F.2d at 536).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6ᵗʰ Cir.1983), and even if substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6ᵗʰ Cir. 1986) (en banc).

## VIII.  DISCUSSION

Plaintiff requests that this Court reverse the Commissioner's decision and he cites three reasons for doing so:

### 1. THE DECISION FOUND THAT PLAINTIFF WAS RELIABLE BUT ALJ CLAIMED THAT HIS TESTIMONY DID NOT SUPPORT DISABILITY, DESPITE VE TESTIMONY TO THE CONTRARY.

Plaintiff argues that the ALJ's finding that he is not disabled is inconsistent with the evidence.  The ALJ found him "reliable" and the VE testified that any person who tended to nod off at unpredictable times would not be able to sustain work.  The inability to control the onset of "nods" is consistent with morbid obesity and obstructive sleep apnea.

Defendant refers the Court to the medical record.  There is no evidence that Plaintiff was unable to stay awake during the day due to sleep apnea.

Whenever a claimant's complaints regarding symptoms, their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints based on the entire case record.  *Rogers v. Commissioner*, 486 F. 3d 234, 247 (6ᵗʰ Cir. 2007).  The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record.  *Id.*

9

Credibility determinations by the ALJ are to be accorded great weight and deference, as the ALJ is in a position to observe the demeanor and credibility of a witness.  *Felisky v. Bowen,* 35 F. 3d 1027, 1036 (6th Cir. 1994).  However, that assessment must be supported by substantial evidence.  *Id.*  Only if the ALJ rejects a claimant's testimony as not credible, must he or she clearly articulate reasons for so finding.

Plaintiff testified that he was hypertensive (Tr. 330), obese (Tr. 331), had sleep apnea which was treated with a nosepiece and CPAP machine (Tr. 332-333, 338), apparently had difficulty breathing on warm days (Tr. 335), had replacement surgery at age 14 (Tr. 336) and he nods on his bad days (Tr. 338).  All of these symptoms/impairments were medically documented (Tr. 107, 111-113, 138, 139-141, 143-145. 241-245, 286 & 289).  Plaintiff's testimony was supported by the medical records.

Plaintiff contends that his "reliable" testimony about his inability to remain awake during the work day and the testimony of the VE that falling asleep on the job would get him fired, supports a finding of disability.  The Magistrate finds that the ALJ properly discounted the VE's testimony that "falling asleep on the job will get you fired" in considering disability.  Based on his experience in job development and placement experience in assessing work capacity, the VE recounted that sleeping on the job affected the level of employability.  The ALJ need not consider employability when determining whether a claimant qualifies as disabled.  20 C. F. R. § 404.1566 (Thomson Reuters/West 2009).

**2.  THE ALJ ERRED IN EVALUATING THE OPINION OF DR. NATIVIDAD.**

Plaintiff considers Dr. Natividad a treating physician.  Plaintiff opined that the ALJ erred in failing to (1) properly analyze Dr. Natividad's opinions for the period of May 2002 through November 2005, (2) acknowledge the weaknesses found by Dr. Natividad that are attributable to diabetes and morbid obesity and (3) state why he rejected Dr. Natividad's limitations imposed on sitting.

Defendant responds with an argument that the ALJ did not summarily dismiss Dr. Natividad's opinions but gave them the weight to which  they were entitled.  The opinions were not well supported by the treatment records; consequently, they were not entitled to controlling weight.

The Sixth Circuit has observed that where the Commissioner's decision to reject a claimant's disability application is otherwise supported by substantial evidence, reversal will nonetheless be required if the agency fails to follow its own procedural regulation requiring the agency to give good reasons if it fails to give weight to a treating physician's opinions in the context of a disability determination.  *Woodard v. Astrue*, 2009 WL 2065781 (M. D. Tenn. 2009) (*citing Wilson v.*

10

*Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004) (*citing* 20 C.F.R. § 404.1527(d)(2)).  An ALJ must give the opinion of a treating source controlling weight if he or she finds the opinion to be well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the other substantial evidence in the case record.  *Id.*

When the opinion of a treating source is not accorded controlling weight, an ALJ must consider such factors as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source in determining what weight to give the opinion.  *Id.* (*citing Harris*, 756 F.2d at 431-35).  This requirement of reason-giving exists to (1) enlighten a claimant who knows that his or her physician has deemed him or her disabled, (2) ensure that the ALJ properly applied the treating physician rule and (3) permit meaningful review of the ALJ's application of the rule.  *Id.* (citations omitted ).

The ALJ examined the nature and extent of the treatment relationship noting that Dr. Natividad, a Lucas County Health Department physician, had seen the claimant just one time prior to the completion of the questionnaire in March 2004.  Clearly, the ALJ did not consider Dr. Natividad a treating source.  He explained why limited weight was attributed to Dr. Natividad's opinions as they were not supported by evidence.  Dr. Natividad's opinions focused mainly on Plaintiff's obesity and asthma.  He noted that the Dr. Natividad's opinions were often inconsistent with Plaintiff's explanations.

The Magistrate finds that the ALJ fulfilled his duty to consider Dr. Natividad's opinions, attributed the relative weight to the opinions and then provided an adequate explanation of his rationale for making such decision.  Failure to accord Dr. Natividad's opinions controlling weight was not reversible error.

### 3.   THE HYPOTHETICAL QUESTION POSED TO THE VE WAS INCOMPLETE.

Plaintiff contends that the ALJ did not present an adequate hypothetical to the VE.  Failure to include his age, education and work experience in the hypothetical questions undermined the VE's conclusions.

Defendant concedes that the ALJ should include information regarding a plaintiff's age, education and work experience.  However, remand would serve no useful purpose.  Defendant directs the Court's attention to the Sixth Circuit Court of Appeals' holding in *Potter v. Commissioner of Social Security*, 223 Fed. Appx. 458, 463 (6th Cir. 2007) (unreported), that when an ALJ inaccurately describes a plaintiff's age, education or work experience in his or her hypothetical question, the error is harmless when such information is not material to the ultimate conclusion that the claimant is not disabled.  Substantial evidence may be produced through reliance on the testimony of a VE in response to "hypothetical" question, but

11

only if the question accurately portrays the claimant's individual physical and mental impairment. *Culbertson v. Barnhart*, 214 F. Supp.2d 788, 798 (N. D. Ohio 2002) (*citing Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987)).

The VE's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she/he "can and cannot do," there exists a significant number of employment opportunities for her in the regional and national economies. *Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004) (*citing* 20 C.F.R. § 416.920(a)(4)(v)). If a claimant's impairments are so severe as to preclude the performance of past work, then age, education, past relevant work experience and residual functional capacity must be considered to determine if other work can be performed. *Lindsley v. Commissioner of Social Security,* 530 F. 3d 601, 603 (6th Cir. 2009).

The Magistrate finds *Potter* distinguishable from this case in that the Sixth Circuit found that the material issue was the degree to which Ms. Potter's mental impairments prevented her from functioning in a work environment. The hypothetical question included a reference to Ms. Potter's age, education and work experience. The reference to the level of education attained by Ms. Potter was mistaken. The mistaken reference to Ms. Potter's 12th grade education was not material as the rest of the hypothetical addressed her non-educational mental limitations which were relevant to the performance of simple tasks that Ms. Potter could perform. The Court reasoned that as a whole, since the ALJ's hypothetical presented Ms. Potter's relevant mental limitation, the reference to an apparent 12th grade education was harmless since her level of education was not material to the conclusion of whether she was disabled.

The determination of whether Plaintiff can make a work adjustment must be based on an administrative evaluation of the interaction between a particular residual functional capacity, age, educational level, work experiences and the remaining occupational base in unskilled work. The criteria of the rule are not met if the specified factors as to age, education, and work experience are not considered. Unlike *Potter,* the ALJ made no mistaken reference to Plaintiff's educational background. The ALJ made **no** reference in the hypothetical questions posed to the VE that addressed Plaintiff's age, education and work experience. This case is remanded to the Commissioner for compliance with the rules that require the ALJ to accurately portray Plaintiff's impairments, including his age, education and work experience, in the hypothetical questions directed to the VE concerning whether the jobs identified will accommodate him.

## CONCLUSION

For the foregoing reasons, this case is remanded to the Commissioner pursuant to Sentence four of 42 U. S. C. § 405(g)

so that the ALJ can consider Plaintiff's age, education and past work in determining whether other jobs exist in significant numbers that accommodate him.

       **IT IS SO ORDERED**.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:    July 31, 2009